EDGAR D. RICKEY V. JOHN E. MORRISON.

*Practice in circuit courts—Defendant supplying an essential element
to plaintiff's case—Foreign executor—Fees—Note given
by heir to obtain possession of part of
estate—Consideration.*

1. A defendant who supplies by his defense an essential element, which he claims plaintiff failed to put into his case before resting, cannot be heard to complain on account of such omission.

2. Where a *foreign* executor brings suit upon an agreement made by one of the heirs to pay him a certain sum in lieu of the fees allowed by the laws of the state where he was appointed upon that part of the estate turned over to said heir, the precise amount of such statutory fees becomes unimportant, nor can the plaintiff be affected by any contract between the defendant and his co-heirs in reference to the settlement of said estate, of which he had no knowledge.

3. The fact that, under an agreement between an heir and his co-heirs, *he* is entitled to the possession of a certain portion of the estate then in the hands of a foreign executor, will not relieve *him* from the payment of a note given to the executor for the purpose of securing the payment of his fees attaching to said portion of the estate which is turned over to such heir, the same being taken in good faith by the executor, who, before learning of any intended contest of payment, has distributed the balance of the estate remaining in his hands. *Moore v. Locomotive Works,* 14 Mich. 274.

4. The surrender by a foreign executor to an heir of a portion of the estate, which the executor had a right to hold until the estate was closed, and from which he would have been entitled to deduct his fees, is a sufficient consideration for a promise by the heir to pay the executor an agreed sum in lieu of such fees.

Error to Ionia.. (Smith, J.)   Argued February 9, 1888.
Decided March 2, 1888.

*Assumpsit.* Defendant brings error.   Affirmed.   The facts are stated in the opinion.

*Lemuel Clute,* for appellant.

*Vosper Brothers,* for plaintiff.

LONG, J.    Plaintiff brought this action in the circuit court for the county of Ionia upon a note of which the following is a copy:

" Thirty days from date I promise to pay E. D. Rickey two hundred and twenty-five dollars, at First National Bank in Ionia, Michigan.             JOHN E. MORRISON,
                    " By Lemuel Clute, His Attorney in Fact.
" *November* 9, 1885."

Defendant pleaded the general issue, and gave notice that he would insist upon the trial—

" That the note, a copy of which is attached to the plaintiff's declaration in this case, had no good or valuable consideration to support it, and contains a mere nude promise, which imposes no obligation on this defendant; that said promise was made by defendant for the purpose of obtaining possession of certain personal property, which at the time said note was given was in possession of said plaintiff, which belonged to defendant, and which said plaintiff, well knowing that this defendant was entitled to the same, fraudulently and wrongfully refused to deliver to defendant until he had extorted from defendant the promise contained in said note ; that said note was given by this defendant to said plaintiff under protest at the time it was given, and with the distinct claim on the part of this defendant that said plaintiff was not entitled to said note, nor to receive or demand any sum or sums of moneys whatever from this defendant, because of his releasing and giving to said defendant the said property, or for or on account of any reason whatever."

The cause was tried before the court without a jury, and the counsel for the defendant requested the court to find the facts. Such finding was made by the court in writing, and is as follows:

" 1. John E. Morrison, Sr., died in Michigan prior to the year 1885.    At the time of his death his home was in the state of Arkansas.    He left as his heirs five children, as follows: Susan Allen, Annie Beardsley, and John E. Morrison,

Jr., residing in Michigan, and Almira R. Shaw and Joseph E. Morrison, residing in Arkansas.

"2. He left estate, real and personal, in the state of Arkansas, and also had at the time of his decease one mortgage made by John E. Morrison, Jr., for $2,000 to said John E. Morrison, deceased, and upon land in Ionia county, Michigan. He also owned at the time of his death bank stock in the First National Bank of Ionia, Michigan, to the amount of $2,000, and had a certificate showing that he was the owner of said bank stock. He also held at the time of his death a receipt signed by John E. Morrison, Jr., showing that John E. Morrison, Jr., had received from the deceased the sum of $3,000, the sum of $1,500 being indorsed on the receipt as paid thereon.

"3. John E. Morrison, Sr., left a will in Arkansas, and Edgar D. Rickey, of Arkansas, the plaintiff in this suit, was named executor therein. He accepted the trust, and qualified as such executor in Arkansas.

"4. The personal estate of the deceased in Arkansas came to the possession of said executor, and the mortgage made by John E. Morrison, Jr., above mentioned, on land in Michigan, and the receipt made by John E., Jr., and the certificate of bank stock running to said deceased, and hereinbefore described, all came into the possession of said Edgar D. Rickey as executor, and he held them as such executor of said deceased until November 9, 1885.

"5. After the death of John E. Morrison, Sr., a difference arose between the heirs as to their rights, and on the thirtieth of September, 1885, Annie Beardsley and Susan Allen executed and delivered to John E. Morrison, Jr., a writing, a copy of which is annexed to this finding, and marked 'Exhibit B.'

"6. On the twenty-sixth day of October, 1885, Joseph E. Morrison and Almira R. Shaw, being the two heirs of John E. Morrison, Sr., deceased, who resided in Arkansas, executed and delivered a writing, a copy of which is hereto annexed, and marked 'Exhibit C.'

"7. That certain letters in October, 1885, passed between Lemuel Clute, of Ionia, who was then the attorney for John E. Morrison, Jr., defendant, and Edgar D. Rickey, the plaintiff; and the substance of the agreements made between John E. Morrison, Jr., the defendant, and his brother and sisters, was made known to said plaintiff.

"8. Some negotiations were had by letter between Mr. Clute, as attorney for defendant, and Mr. Rickey, the plaint-

iff, relative to plaintiff sending the $3,000 receipt made by defendant, the mortgage made by defendant, and the certificate for bank stock to Ionia for defendant. This was not done, and finally Mr. Clute, as attorney for defendant, went to Arkansas to close the matter up with Mr. Rickey, the executor, and obtained the receipt, the mortgage, and the certificate of bank stock.

"9. The deceased left land in the state of Arkansas estimated to be worth $500, and personal property in that state estimated at about $1,900.

"10. The plaintiff never saw the contracts made between the defendant and his brother and sisters in reference to a settlement.

"11. The statutes of the state of Arkansas were put in evidence as to the fees of executors, and show that executors in that state may be allowed by the court any sum not exceeding ten per cent. on all sums less than $1,000; on all sums over $1,000, and less than $5,000, five per cent.; and on all sums over $5,000, three per cent.,—for his risk and trouble in attending to the settlement of such estate.

"12. November 9, 1885, Mr. Clute, as attorney for defendant, being in Arkansas, and the plaintiff still acting as executor, as aforesaid, the estate not being closed, the plaintiff, still holding as executor the certificate of bank stock, the mortgage, and receipt signed by the defendant, claimed to Clute that he was entitled to his fees or commission, as executor, on these papers, and refused to deliver them to the attorney for defendant unless these fees were paid. The executor was informed November 9, 1885, by the judge of probate of the county where the will was probated, that he (the executor) was entitled to ten per cent. on any papers in his hands as executor, under the laws of Arkansas. Mr. Clute claimed he was not entitled to any fees on the papers. After some negotiation, the executor consented to deliver the papers to Mr. Clute if he would give him defendant's note for $225, due in 30 days, but refused to deliver any of the papers to Clute unless the note was given. Before this, he had claimed that his fees amounted to $410. Clute insisted that plaintiff was not entitled to anything from defendant, but they finally settled and agreed upon $225, and Mr. Clute wrote out and delivered, in order to obtain the papers, to the executor, the plaintiff in this cause, a note, of which the following is a copy, to wit:

"'Thirty days from date I promise to pay E. D. Rickey two hun-

dred and twenty-five dollars, at First National Bank in Ionia, Michigan.                                         JOHN E. MORRISON,

"'*November* 9, 1885.        By Lemuel Clute, His Attorney in Fact.'

"Thereupon the papers, to wit, the certificate of bank stock for $2,000 of the First National Bank of Ionia, Michigan, the mortgage made by defendant to his father, and the receipt for $3,000, with $1,500 indorsed thereon, and signed by defendant, were delivered by the executor to Mr. Clute, as attorney for the defendant.

"13. It is admitted that Mr. Clute was the attorney in fact for defendant at the time of making the note, and had authority to execute the same as it was executed.

"14. The brother and sister of defendant who resided in Arkansas were present at the time the note was given, and insisted to the executor that defendant should pay his (the executor's) fees on the papers delivered, and the executor claimed that his fees were not a part of the expenses.

"15. After the giving of the note, and within a week after, the estate was distributed and closed up by the executor.

"16. At the time the note was given a proceeding or suit was pending in Arkansas to set aside the will of John E. Morrison, Sr., and not at that date determined.

"17. That the plaintiff claimed honestly and in good faith that he was entitled to his fees from defendant on the papers delivered, and delivered the papers to Mr. Clute for defendant because he received the note in question in this suit; that plaintiff had reason to believe, and did believe, that he was entitled to his fees on these papers from defendant.

"From the foregoing facts I conclude that there was no fraud or mistake in the transaction, and that Mr. Clute must have regarded it for the interest of defendant to make the note, and obtain the property by giving it; that claims were honestly made, and the parties compromised, and courts ought not to go back of the arrangement; that a good consideration is shown, and the plaintiff must recover.

"Defendant's attorney submits nine propositions of law, and asks that the court pass specially upon them. They are hereto annexed, and marked 'Exhibit E.'

"As to the first and second, I think a sufficient consideration is shown, and the points are not well taken.

"The third, fourth, fifth, and sixth are not applicable to this case, for the reason that this was a compromise of honestly disputed rights; and whether the laws of Arkansas gave

plaintiff his fees on the papers delivered, or whether the contract between the heirs gave the defendant the right to receive the papers, or whether the papers were Michigan assets, or whether the executor had other property in Arkansas from which he could make his fees, does not change the legal *status* of the case.

" The seventh I do not think is sustained by the evidence. The papers were not delivered to him simply because of the settlement. They would not have been delivered had he not given the note.

" As to the eighth, I do not find that the executor was acting in the interests of the heirs in Arkansas, but think he honestly thought the defendant should pay his fees on the Michigan papers.

" Judgment should be entered for the plaintiff for amount of note, which is $246.

" Let judgment be entered for the plaintiff, and against defendant, for that amount."

Thereupon judgment was entered in the cause in favor of plaintiff, and against defendant, for the sum of $246; to which findings defendant, within the time allowed by rule, alleged exceptions. Defendant now brings the cause into this Court upon writ of error, and assigns as error:

" 1. That the finding of facts does not support the judgment, which should, on the facts as found, have been entered for defendant.

" 2. The court erred in holding that the note in question was receivable in evidence, and made a *prima facie* case for the plaintiff, without any averment in the declaration alleging a consideration to support the promise, and without any proof of value received, and in overruling the objection made by defendant to the reception of the note in evidence.

" 3. The court erred in holding that the plaintiff need not aver and prove a legal consideration before he can recover on a note not negotiable, and not admitting value received.

" 4. The court erred in holding that defendant's third, fourth, fifth, and sixth propositions of law, as submitted to be passed upon by the court, are not applicable to this case.

" 5. The court erred in holding that a good consideration was shown to support the promise contained in the note.

" 6. The court errs in holding that the consent of the defendant, by his attorney, to execute the note in question, for the purpose of getting possession of the papers belong-

ing to defendant, constitutes such a compromise or settlement of a disputed claim that defendant is estopped from showing that plaintiff had no right to make the claim he did.

" 7. The court erred in ruling that defendant's seventh proposition of law was not sustained by the evidence, for there is no evidence tending to show plaintiff had any lien upon, or was entitled to any fees from defendant for delivering, the property in question.

" 8. The court errs in holding that if plaintiff honestly claimed the amount named in the note, and defendant, in order to get the papers, agreed to pay it, he is conclusively bound by the agreement.

" 9. The court erred in holding that plaintiff is entitled to recover even if the property defendant received consisted of Michigan assets."

A bill of exceptions was settled in the case, which sets out substantially all the testimony taken on the trial; and from this testimony the court was fully justified in finding the facts set out in the record, and, upon such facts, entering judgment in the cause for plaintiff. Such facts fully support the judgment.

The second assignment of error is not supported by the record. The record shows that plaintiff, in support of his claim, offered the note in evidence. Defendant objected to its reception under the declaration, for the reason that it was not a negotiable note, and did not admit being given for value received. The court overruled this objection, and received the note in evidence. This was the only ruling the court made upon the note. The plaintiff then rested his case.

The defendant did not rest here, but went into proof of the consideration of the note, and plaintiff was permitted to controvert that part of the defense, and the court, in giving judgment, based it upon all the evidence in the case. The defendant, by his own course and showing upon the trial, supplied the very element in the case which he now alleges the plaintiff should have put into the case before resting, and he cannot now be heard to complain.

69 MICH.—10.

This also covers the third assignment of error so far as the court made any ruling upon the question. What would have been the duty of the court had the defendant rested his case at the time plaintiff rested it does not become necessary to determine upon this record. The plaintiff had a right to have the note in evidence, as tending to prove his case. It was the contract upon which he brought his suit. The signature to the contract was not in dispute, and it was competent for the plaintiff to put it in evidence. How. Stat. § 7346; *Railway Co. v. Potter,* 55 Mich. 627 (22 N. W. Rep. 70).

The fourth assignment of error relates to the finding of the court that certain propositions of law submitted by the defendant were not applicable to the case. These propositions were that, before plaintiff could recover, he must show that by the law of Arkansas he was, at the time the note was given, entitled to receive from the defendant as his fees or commissions on this property, which he delivered to the defendant, the sum named in the note.

That the defendant having made a contract with his brother and sister which entitled him to the possession of the property which he received from the plaintiff at the time the note in question was given, and his brother and sister in Arkansas having agreed to assume and pay all expenses of settling their father's estate in Arkansas, if plaintiff knew of this contract, and assented to it, and had other assets in his hands from which his fees could be allowed, he had no right to exact from defendant the amount of the note as a condition of giving up the property, and there was therefore no valid consideration to support the promise, and he cannot recover.

That the bank stock, and notes and obligations of the defendant, would be Michigan assets, and an executor in Arkansas would not be entitled to collect fees merely because they come into his possession in that state.

That if the plaintiff, as executor of the estate, had other property in his possession which belonged to the estate, and

from which his fees and expenses as executor could be allowed, then he was in no manner prejudiced or hindered from receiving his legal fees and expenses as executor by allowing the defendant to have the property in question; and if he knew, at the time he released the property to defendant, that by agreement between defendant and his brother and sister in Arkansas, who were to have the assets in that state, that the expenses of administration were to be paid from the assets remaining in his hands as executor, he cannot recover.

The record shows that the statutes of Arkansas were put in evidence as to fees of executors, and the court, from such proofs, specially finds in his eleventh finding of facts that the plaintiff was entitled to fees under the laws of Arkansas, and the amount thereof ; but that inasmuch as the parties, by their own contract, had settled and agreed upon the amount of fees due the plaintiff, it became unimportant what precise amount the statute would have allowed.

The plaintiff could in no manner be affected by the contract between the defendant and his brother and sister in reference to the settlement of their father's estate; it could not affect his rights. The statute fixed his fees. He was not a party to that contract, and the court expressly finds that the plaintiff never saw the contract.

There is no force in the fifth proposition of the counsel for defendant. The bank stock and notes and obligations of defendant passed to the plaintiff as executor, under the statutes of Arkansas, and would be subjected to the payment of the debts of the testator, and the expenses of administration of his estate. The defendant gave this note for the purpose of securing payment to the plaintiff of his fees upon that part of the estate turned over to defendant. The plaintiff took the note in good faith, and in full reliance that it would be paid at maturity, and distributed the balance of the estate in Arkansas before he had any notice that the note would be contested.

The defendant now claims that by reason of the contract made between himself and his brother and sister, to which contract the plaintiff was not a party, and which the court finds he never saw, he was entitled to the papers without paying the $225, and for that reason his agreement to pay $225 for the purpose of obtaining them is a nude promise.

In *Moore v. Locomotive Works*, 14 Mich. 274, this Court, under a somewhat similar claim, said :

" So that the plaintiffs in error actually received the property under the promise which they now insist is invalid. If they regarded it for their interest, at the time, to make the arrangement, and have obtained the property under it, it is not in our power now to set it aside on the ground of their being entitled to just as much under the contract before existing. They knew their legal rights at the time, and must be supposed to have consulted their own interests in entering into the new arrangement."

We need not discuss the seventh assignment of error, as under the arrangement made between the parties to this cause, the plaintiff surrendered to the defendant the Michigan assets of the defendant's father's estate, which plaintiff had a right to hold until the estate could be closed, and from which he would have been entitled to deduct his fees as executor. This was a sufficient consideration for the promise contained in the note. *Weed v. Terry*, 2 Doug. 344; *Van Dyke v. Davis*, 2 Mich. 144; *Gates v. Shutts*, 7 Id. 127.

The eighth and ninth assignments of error have no force. The court was correct in its conclusions of law upon the questions to which such assignments relate.

We are satisfied, from an examination of the whole case, that no error was committed by the court, either in the findings of fact or of law. The contract between the parties was a valid one. It was founded upon a sufficient consideration, and was entered into upon the part of the plaintiff in good faith ; and it can make no difference that the agent of the

defendant, at the time of making it, intended to avoid it when the plaintiff sought to enforce it.

The judgment of the court below is therefore affirmed, with costs.

The other Justices concurred.